v. United States Agency for International Development. Mr. Crowley for the appellant, Mr. Walker for the appellate. Counsel for the appellant. Please proceed. Judge Rogers, we seem to have lost Mr. Crowley just now. We are trying to get him back on Thank you. Judge Rogers, Mr. Crowley has connected again. All right, thank you. Good morning. Sorry about that. It's all right. Please proceed. Good morning, Your Honors. May it please the court, my name is Dan Crowley and I represent the appellant Likza Iglesias. In this appeal, we raise two issues with respect to Mrs. Iglesias' whistleblower retaliation defense. The first is that important information was wrongfully denied from us, the identity of the informant. And we ask the court to do what neither the OIG, the board, or the district court did, and that's read the statute and apply it to the facts of this case. Would you repeat that last sentence? I lost your voice. I'm sorry. We ask the court to read the statute and apply it to the facts of this case, which is something that neither the board, the district court, or even the OIG has really done in this case. But I'd like to begin with our second argument, if I may, because although we were hamstrung by the 7B ruling by the board, we believe that we nevertheless made out a case for whistleblower retaliation, but the court applied the wrong standard. Counsel, this is Judge Griffin. I'd rather you walk back to 7B for a minute. Can you walk me through your textual argument that an employee of the OIG is not protected under 7B of the Act? Yes, absolutely, Your Honor. Thank you. IG Act covers employees of the establishment, and there is no evidence in the record that this informant worked for USAID. There was an in-camera submission where the agency was asked to provide certain information about the informant, and the OIG said they know who the informant is, but they didn't say whether it was an employee. Did you make that argument before the board, that the informant might not have been an employee of the OIG? Did you make that argument before the board? And if so, where does that argument appear in the joint appendix? Because I couldn't find it. We did not make that specific argument in support of this claim before the board. Okay, well, then that's over then, right? Well, let's be clear what argument you did make and what the implication of that argument was, in terms of your ability to raise, to elaborate on that argument. That's what I want to be clear. Well, Your Honor, we did argue from the very beginning that there was no evidence that this employee was covered by the IG Act, and that's our claim. And for us to now present an additional argument in support of that claim, that the employee, there was no evidence that the employee worked with the agency. Correct me if I'm wrong. I thought your argument was a textual argument based on your interpretation of the Act, and that you were arguing that the Act was not limited to the employee of the OIG. Go back to 7B. Let's not get into whether this person falls under 7B or not. Just help me understand what you're saying about 7B and who it reaches, who it protects. Yes, Your Honor. So the OIG, Section 7B of the OIG Act, allows the IG to receive complaints from employees of the establishment and then has to give some level of confidentiality to people who bring those complaints. Now, the entire Act uses the words establishment and office to distinguish between the agency and the independent office of inspector general. It uses those words to distinguish between the two of them and to delineate the responsibilities of one versus the other. For example, Section 4 of the Act requires the IG to audit the establishment. Section 3 prohibits the establishment from interfering with the IG's audit. And Section 6 requires the establishment to comply with requests for information from the IG. None of this makes sense if establishment is meant to include OIG. And to take it a step further, if you look at Section 11 of the IG Act, it creates a third entity. It's the Council of Inspectors General on Integrity and Efficiency. And there's a committee that's created by the statute within that council that exists to receive complaints about the inspector general. So it shows that there's actually an alternative venue for OIG employees to report concerns about OIG management, and that's under Section 11. But really, I think the clearest example is Section 7 itself because the agency's only argument as to why this confidentiality provision applies to OIG employees is that it's necessary to protect them from retaliation. But the question that we've asked from the beginning is who? The agency has never answered it, nor has the board or the district. If the agency claims that the incident is an OIG employee, then the OIG has personnel authority over the employee. And the OIG admits that it knows who the employee is. It's confidentiality would not offer, it cannot possibly offer any protection to an OIG employee against retaliation. So it doesn't make any sense to apply to the OIG. And additionally, Section 7b is not an absolute promise of confidentiality. Let me back up. Section 12f defines the OIG by saying the term office means the inspector general of an establishment. I'm sorry, 12-4. 12-4. Yes, it's an independent office within the establishment. I mean, the office of inspector general is part of the agency, but the Act is using the words establishment and office to differentiate between them. I mean, it wouldn't make any sense to require the OIG as an establishment to provide records to itself or to audit itself. I mean, it just doesn't make any sense when applied that way. And this is an Act that created this office within the agency and then defines the responsibilities of the agency to the OIG and vice versa. And in addition to that, Section 7b is not an absolute promise of confidentiality. The OIG has discretion to disclose the informant identity when doing so is unavoidable. And this case fits within that discretion, that exception. 7b allows the inspector general where necessary to fully pursue the object of an investigation to identify the source. And here we're talking about a separation action that is the culmination and the purpose of that investigation. It's the final step of that. So the OIG would have to disclose it, and it's necessary because Mrs. Iglesias has raised her whistleblower, her statutory right as a whistleblower, to prove that her investigation was influenced by someone else. And the case law, including Russell at the MSPB in particular, hold that if the person who was involved in the investigation then that complaint is tainted. I'm having some difficulty hearing. There's some background noise there. I'm no technology expert, but everyone ought to have their, unless they're speaking, they ought to have their speakerphone muted so that we don't hear toilet flushes or background noise. I don't know if any of the other judges are having problems hearing the argument, but I'm hearing a lot of background noise. I thought the connection with counsel has been weak. Maybe that's it. Maybe that's it. Thank you, Mr. Crowley. Judge Griffith, did you want to follow up? No, that's fine. Thank you. Okay. With respect to our whistleblower retaliation defense, we only need to prove retaliation, we only need to show that the disclosure was a contributing factor. It's really an unusually low standard of proof that reflects a strong public policy in favor of whistleblowing. We don't have to prove that whistleblowing was the only reason or the main reason for the action, just that it was a contributing factor to the decision. And proving this, as the Federal Circuit acknowledged in Whitmore, rarely involves direct evidence because people don't admit to retaliation. So courts came up with these other ways to prove circumstantial evidence of retaliation, and it's the acknowledged timing test, the retaliation by investigation, the mosaic of suspicious events, and here the board's own factual findings actually satisfied every one of those tests. But the board refused to apply those legal standards. Instead, it described all of the circumstantial evidence as speculative because, in essence, it required that someone who knew of the disclosures admitted that they interfered with the investigation or that someone who was involved in the investigation admit they know of the disclosures, which, in other words, means that they required someone to admit to committing a prohibited personnel practice, an illegal act. But these three tests in the circumstantial evidence rule exist precisely because that's so unlikely and it's not required under the law. And by insisting on anything short of that, by insisting that anything short of that is speculation, the court effectively rejected those legal standards. And if the case was viewed under the correct standard, it would be arbitrary and capricious to find that there was no evidence of retaliation. But in order to show how the board failed to apply the correct standard, I think it's necessary to highlight a couple of the facts the board found. It was clear from the board's decision that it found that McLennan's investigation was suspicious. Her explanations were not credible as found by the board. But despite that, the board kept characterizing the evidence and saying it suggested a proper motive. It arguably showed a mosaic of a suspicious event. And then it would conclude that it was all speculation connected to the disclosures. But the nexus is clear from the involvement of the people in the chain of command. You had Iglesias' supervisor, Christine Byrne, the inspector general, and the ambassador. They all communicated with McLennan throughout the investigation. They all kept tabs on the investigation. The board found that to be unusual and suspicious. Then, before McLennan even interviewed Iglesias, the inspector general decided to curtail her and bring her back to Washington. And Byrne told the inspector general that the ambassador was happy with the decision and that she didn't think any more feather smoothing was necessary. And all of this interest about trying to get Iglesias out of the country was over what? The original allegation here, the informant's complaint, was that Iglesias claimed reimbursement for a driver that she didn't use. The total amount, according to the informant, was $2,488. That's it. It's simply not credible that McLennan flew from Washington, D.C., to South Africa, kicked the investigator off the case, and when searching through all these unrelated records, keeping the highest officials of the department and the State Department appraised of her progress, all because they thought an auditor received $2,000 to pay her driver. The nexus is the involvement of these three people. For example, the ambassador. Iglesias made many attempts, as the board found, to disclose that the ambassador had caused the waste of $120 million in taxpayer money. It was a high-priority program announced by the Secretary of State herself, and the board found that she tried to include his errors in the audit report and that she spoke with people inside and outside the organization about it. It's not speculation. Counsel, let me go back, if I may, to where you started. You argued to the board and to the district court that as a matter of statutory interpretation, the IGA did not apply to the informant because the statutory language establishment does not include the office. That's right. Then, or now, you're arguing there was no evidence that the informant was even an employee, an employee of USAID, and that the court may consider this because it is simply another argument that the statute doesn't apply to the informant. So the question is, how can this evidentiary or factual question have anything to do with the argument you made below about the meaning of the word establishment? Our argument below about the meaning of the word establishment had to do with whether or not this employee qualified for coverage under the statute. And as the OIG has suggested throughout the case, stated in its brief, but never actually produced evidence that the OIG has claimed that the employee is one of its own. And that's the argument that we made below. And another argument in support of our claim that the IGA does not cover this employee, both in the district court and now, is that there's no evidence at all that this employee worked for USAID. And I think it's important to note that below, when the board decided on this in-camera submission, it did so without any notice to the parties. We didn't have any input on whether or not, or what questions would be asked. We had filed a motion to compel, the agency opposed it. And the board, I guess, decided that the IG Act applied without really explaining why, and came up with this attempt to reconcile the differences. That's, frankly, completely inadequate because it doesn't even disclose whether or not the informant knew of Iglesias' disclosure. It doesn't even meet the purpose that it was offered for, because the board found that Iglesias made disclosures within the audit reporting system, and also by talking to other people, her supervisors, and people inside and outside the agency, and at the State Department, and people at non-government organizations like the Gates Foundation. The board found that she made all of those disclosures, yet the in-camera submission was one. Do my colleagues have any questions? All right. Let us hear from Mr. Walker for appellee, and then we'll give you some time on rebuttal.  Good morning, Mr. Walker. Yes, good morning, Your Honor. Thank you. My thanks also to the Deputy for making the arrangements this morning. I'll talk to the stage somewhat for the procedural posture of this case. Miss Iglesias, through the fraudulent use of reimbursement measures, misappropriated taxpayer money for her own benefit. This is a significant abuse of trust by a person who was her sub-charge with auditing government programs for waste, fraud, and abuse. Ample grounds to terminate her employment from the OIG. The Foreign Service Grievance Board so found, and Iglesias does not challenge that determination. My colleague, to make light of the overall value of the amount of money at issue, that discounts the gravity and seriousness with which the agency must approach an individual who is charged with auditing for self-committing fraud against the organization. If I could turn to the argument that my colleague focused on, which is the interpretation of Section 7B of the OIG Act, and whether or not a mandatory confidentiality provision extends to employees. I'm sorry, Jennifer, I made a mistake. Is it your understanding that the district court never decided that question as to whether 7B applied? I believe the district court did decide that it would be applied, but the district court also did look at it through a somewhat different lens. The district court looked at this as a discovery ruling that is committed to the board's discretion, and there are some indications that that is what the board was doing. At JA 1391, this was the board's... I'm looking at the district court's memorandum of opinion on page 15, and the district court says, Although the parties briefed the statutory question at length before the board, the board did not answer it. All right? And then it goes on to describe what the board did. And then he says on page 16, The court must treat the board's determination concerning the appropriate extent of discovery with extreme deference. And he goes on there. Where has he made a legal decision on the applicability of the statute? Well, he just affirms the board's decision, and we believe that the board did make a determination about the applicability of the IDES Act. If you look at the board's decision for a second... But my question is, where did the district court? He didn't address it, unless I have just missed it. Not directly. The district court did affirm the board's determination that the IDES Act does apply. Counsel, if we disagreed with you and thought that the district court erred when it said that the board did not interpret the Act, would that make a difference to us on our review in this case? Aren't we here reviewing the board de novo? That's exactly right, Your Honor. The standard review is that the board reviews the board. There's not a significant amount of deference to the district court determination in this court's exercise. But this court is reviewing what the board did. I would also note that... So could I just be clear? Yes, Your Honor. At least one district court judge, even though we may not owe any deference to him, read the record and concluded the board did not answer the question, the statutory question. That's what I was focusing on, that the board never decided this question. And I'm not disagreeing with what you point to the record saying that, well, when you look at what the board did, it had to have decided it. But it never decided it in the sense of explaining why it concluded it applied here. That's all I was trying to understand. Sure, Your Honor. I think that the initial motion to compel, and in response to the motion to compel board issue a ruling on December 2nd, which is that day 1381, in which it indicated that it would require USAID to disclose certain information about performance in camera. And it said it was doing it based on a ruling of the committee's interest. So that tends to indicate that it's a discovery ruling and not a pure application of the IGX. Later, in the December 29th ruling, after USAID did that information in camera to the board, the board concluded no further discovery regarding the inform that would be necessary in the strictures of the IG Act. So in that December 29th ruling, it certainly does indicate that the board did determine that the IG Act applies, though it did not discuss it as why specifically in the statute the IG does apply. That said, as Judge Griffith indicated, this court does review the decision of the board itself, not necessarily the decision of the district court. This court can take a look at the IG Act and determine whether or not the mandatory confidentiality provisions of the OIG, and it clearly does. The OIG Act makes perfectly clear that the Office of Inspector General is part of the establishment. That's clear. With the Act, I'll note three provisions in particular. One is Section 2, in which it states that it characterizes Office of Inspector General as, quote, in each of such establishments. So the Office of Inspector General is in the establishment. If you look at Section 3, it states, clearly putting the Office of Inspector General within the establishment. And if you look at Section 6E1, it provides that the Office of Inspector General, considered a separate agency, owns four very specific and enumerated purposes. Those large have to do with employment matters having to do with voluntary separations, retirement, and the senior executive service. That would seem to indicate that for all other purposes, including the other employment provisions of Title V, the Office of Inspector General is part of the establishment. My colleague makes a distinction between the statute's use of establishments to refer to U.S. ID where it ought to refer to the Office of Inspector General. There is clearly a distinction there, but the distinction is distinguishing the part from the whole. Section 7B, I, mandatory confidentiality to the whole, which clearly is, by applying to the whole, it also applies to the part. Indeed, it's worth noting that Ms. Iglesias makes the U.S. ID writ large as the respondent before the board, the respondent before the district. Certainly she can't claim somehow that the Office of Inspector General is some independent and distinct entity. I would also like to address my colleague's assertion that there is no evidence in the record that the informant was an employee of OIG. Not only did Ms. Iglesias fail to make that argument before the administrative stage proceeding, she affirmatively assumed that the individual was an employee of OIG, and the agency confirmed that in responding to her argument. It would be sandbagging the agency to claim in district court proceedings that the agency did not have evidence to that effect when Ms. Iglesias herself assumed that fact before the board, giving the agency no cause to present evidence to that effect. I just have no further questions. I'm happy to rest on the briefs and the arguments made thus far. Well, do you wish to respond to the argument about the district board in terms of the whistleblower? Sure. This is the charge that the board did not apply, did not accept the proposition that a retaliation whistleblower defense can be proved with circumstantial evidence. And that's just contradicted by the board. The information or the details that my colleague characterizes as circumstantial evidence are factual details and issues about which Ms. Iglesias was permitted recovery, that she presented evidence at the hearing, and the board considered all of that evidence in detail in rendering this decision. That indicates that the board did indeed take those facts as evidence, as relevant evidence. The fact that Ms. Iglesias presented evidence as part of her case does compel a determination in her face. The board clearly accepted the proposition that circumstantial evidence applies. If we said so, permitted her to induce such evidence, present such evidence, but ultimately found that the circumstantial evidence was insufficient to justify the nexus that Iglesias had approved between protected disclosures and personnel action. It's not applying the wrong evidentiary standard. And that's just a failure of proof overall. It's Iglesias' part, which is not something that she disputes. So, counsel, two questions. One, the evidence that was submitted to the board in terms of who the informant was, the way it's described, I couldn't tell that it said what you're saying you understand the board to have found. In other words, the statement submitted to the board could have been written in a way that made it clear whether the informant was an employee of USAID or not, much less an employee of the office. Did that evidence ever get to the board? The response regarding information about the employee did not specifically say the person is an employee of OIG. The agency's, OIG's response to Ms. Iglesias' motion to compel, I acknowledge the proposition in Ms. Iglesias' motion to compel the individual as an employee of OIG. The individual is an employee of OIG. That was assumed at the administrative record by Ms. Iglesias, alleged by the agency, and it's a common issue. Well, I'd like to see the context in which she assumed it, because she was raising that question earlier. And I don't know whether they had moved on to a certain point where, as you know, counsel can make an alternative argument that, you know, even if she is, I still win. So I just want to be clear what information the board had. And the board's opinion didn't help me there, or the board's orders, yeah. The board had no dispute on this whatsoever from the parties. Ms. Iglesias did not argue an alternative. She argued that the employee was not covered by Section 7B of the AP Act because, basically, that person was an employee of OIG. It's something she assumed in her argument. But that was a statutory interpretation argument, right? Correct, correct. But certainly there was a factual assumption underlying that statutory interpretation argument. Well, that's your assumption. All right, that's what I'm trying to understand. That was my question to counsel for appellant, that she was making the statutory argument to the board. Now she's making the evidentiary argument. Well, the reason I characterize that as sandbagging, Your Honor, is because the statutory argument made to the board was premised on the assumption, entirely premised on the assumption that this individual was an employee of OIG. There was never any question about that. And in responding to that argument, the agency acknowledged that. So there was no cause for the agency to have to address an issue as to whether or not this person was an employee of OIG because it was something that was conceded by plaintiffs in making their initial argument as to the ability of 7B. So to concede something like that at the board level and then to raise it to court, it's sandbagging the agency. Well, I understand your argument, but I want to see where she conceded it. That's what I'm trying to understand. Certainly, Your Honor. I'll provide you a citation and a joint appendix if I may have the court's indulgence for just a moment. Great, thank you. It's in the motion to compel discovery that she filed. Sorry, just a moment. No, we don't need you to take up time here. I can look it up. You think it's in the motion to compel. And I can ask counsel to look it up, too. Certainly, Your Honor. It is in the motion to compel the two deponents to answer questions about the identity of that individual. She makes the argument that the IG Act does not apply to this individual who is an employee of OIG. Thank you, Your Honor, very much for your time. Let me ask that you please affirm the district court. Your Honor, I'd like to start by addressing this claim that we were sandbagging the government here. This claim of 7B didn't come up at our insistence. The claim of 7B came up in the middle of a deposition when the government made an objection. It was initially resolved in a telephone call with the presiding member, and then we filed a motion to compel. The motions that you see are not the first instance where this issue was raised. But in addition to that, it is not our obligation to prove whether or not the informant is covered. If the agency wants to make a discovery objection and seek an order prohibiting us from receiving discovery, it is the government's burden to show that the employee is covered in the first instance. So I don't think that it is fair at all to characterize what we did as sandbagging, nor is that decision that we have in the motion that we have in the record, the original. I don't believe the original oral ruling is in the record here, besides a memorandum that might reflect it. But I think it's described in the pleadings. But I'd also like to note that the board did, I believe, expressly find that the IG Act applied. And there's two places where it did that. In its first order, opening discovery, it's page 1389 in the appendix. And it's footnote 10. And it says that in our analysis, we conclude that the source of the complaint against Mrs. Iglesias could reasonably be assumed to be a whistleblower and thus also protected under the Whistleblower Protection Act. But the key is then, it says, in addition to the IGA. So I think there it's making very clear that it's already found that the informant was protected by the IGA. And then in its supplemental order, in the very last sentence of the order, it starts on page 1403 and goes to 1404. They say, we conclude that USAID is not required to disclose the identity of the confidential source to the charged employee, given his or her refusal to consent to such disclosure and the strictures of the IGA. So it is certainly relying on the IGA. All right. So I'm just looking at your brief. You're seeking dictator of the judgment and remand with directions to the district court to find as a matter of law that your client's interest in disclosure outweighs any interest in confidentiality. So how do we fit that in, given our standard of review, where we're not deferring in any way to the district court? Well, because the review is de novo, this court is free to interpret the IGA and decide whether or not it applies. And it can make that decision and then remand to the district court to tell the district court because its decision was wrong when it found that the board did not rely on it, did not rely on the IGA. I get that part. What I'm interested in here is just understanding, if we were to hold the act did not apply, that's one situation. If we hold the act does apply, then you're asking us to make a factual determination, are you not? To make the determination if the IGA applied to this. No, I don't think it's a factual determination because if you find that it does apply. No, I think you can still find as a matter of law that this fits within the exception of the 7B because 7B allows the disclosure in the case where it's unavoidable. And because Mr. Glacius has put it at issue here, disclosure is unavoidable to the conclusion of the investigation and the ultimate point of the investigation. But also if you look at, if it's found that this does actually apply and that the exception does not apply and you have a conflict between the statutes, it's clear from the record that we have already that the informant has next to no interest in confidentiality because as the government argues, the only interest in confidentiality, the point of confidentiality is to protect them from retaliation. But if, as they claim, it is no IG employee, it receives no benefit. It receives no protection from retaliation by confidentiality. So at the end of the day, whether it applies or not, this employee or this informant, if it is an employee, has no interest in confidentiality and certainly no interest that can outweigh Mrs. Glacius's rights. I mean, she has a property interest in her job as a federal employee that's guaranteed by the due process clause of the Constitution and she has her rights as a whistleblower to prove that her, the investigation of her was motivated by retaliation. Those are significant, strong interests that... I'm just trying to figure out, there's a legal question and I understand that. But it's the next part of your request that I wasn't that clear about. In other words, a deciding body could decide that the property interest in a job outweighs the confidentiality interest that this particular informant might have. But from an institutional point of view, given why the office was established, it's important that whistleblowers know that their identity will not be disclosed. I'm just trying to understand. I get it that we can interpret a statute. I get it that we can look at the two statutes. But I was just wondering about weighing the matter without further fact-finding here. That's all. You don't have a problem with that? No, Your Honor, because I think that the facts are all clear. I think it's clear that if the purpose of the statute is to provide confidentiality, it doesn't do that when applied to an OIG, to this informant. It doesn't do that. So this employee doesn't have any interest in confidentiality. They have protections. They have whistleblower protections. They can't be retaliated against under the Whistleblower Protection Act. But the Whistleblower Protection Act doesn't provide confidentiality. All right. Any questions of anyone else, of our colleagues? Then we will take the case under advisement.
judges: Rogers, Griffith, Rao